Argued May 13, affirmed November 19, 1969. Petition for writ of certiorari denied by United States Supreme Court April 20, 1970

NORTH, *Appellant, v.* CUPP, *Respondent.*

461 P. 2d 271

452

*Ken C. Hadley,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*David H. Blunt,* Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Robert Y. Thornton, Attorney General, and Helen B. Kalil, Assistant Attorney General, Salem.

HOLMAN, J.

Petitioner was convicted in 1963 of the crime of using explosives to commit a crime in a building entered in the nighttime.[①] He was apprehended in the basement of a bank building. A search of his automobile produced incriminating evidence. The search was made six days after petitioner's arrest and without a warrant. There can be little doubt that the search and seizure was in violation of the Fourth Amendment. The evidence found in the car was introduced by the state without objection at petitioner's

---

[①] ORS 164.260.

1963 trial. An unsuccessful appeal was taken from his conviction, but no error was assigned to the receipt of evidence secured through illegal search and seizure. *State v. North,* 238 Or 90, 390 P2d 637 (1964). Petitioner then brought this post-conviction proceeding, asserting a violation of his Fourth Amendment rights because of the court's receipt of the evidence found in his automobile. Petitioner appealed from an adjudication, rendered after a hearing, that he was barred from asserting his Fourth Amendment rights because there had been an intentional failure to object.

Petitioner's counsel, who represented him during his trial of conviction, testified in the post-conviction hearing that he failed to object to the introduction of the evidence in question because he thought it was admissible. Petitioner testified he had no way of knowing whether the evidence was properly admissible or not. Incompetence of counsel is not asserted as a ground for relief.

At the threshold of this opinion a question arises which has not been presented by counsel. That problem is whether the provisions of Oregon's Post-Conviction Hearing Act dictate that petitioner prevail upon a showing that constitutionally defective evidence was introduced at his trial of conviction despite the absence of any objection to its introduction. ORS 138.550(1) provides as follows:

> "The failure of petitioner * * * to have raised matters alleged in his petition at his trial, *shall not affect the availability of relief* under ORS 138.510 to 138.680 * * *." (Emphasis ours.)

If the statute is interpreted literally, it can be construed to mean that petitioner must be granted relief

even though he did not object at trial and regardless of the reason for his failure to do so.

At the outset, it should be made clear that we are not talking about the right to file a petition for relief for the purpose of having the court consider petitioner's alleged constitutional grievance. A petitioner has such right. We are only considering whether a petitioner is entitled to relief upon a showing that constitutionally defective evidence was admitted without regard to the circumstances under which he failed to object.

The quoted part of ORS 138.550(1) must not be construed in a vacuum but must be read with the other provisions of the act. ORS 138.530(1)(a) provides that relief can be granted where there was "[a] substantial denial in the proceedings resulting in petitioner's conviction * * * of petitioner's rights under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, * * *." We do not construe the provision of ORS 138.550(1), which is in question, as intending to determine what state of facts constitutes a "substantial denial." Whether there has been a substantial denial of petitioner's constitutional rights by the admission of the evidence during his trial of conviction is the question at hand. This will be determined by the circumstances under which he failed to raise the issue at trial. The question is not predetermined by ORS 138.550(1).

■ If ORS 138.550(1) is construed as putting the petitioner, under all circumstances, in the same situation as he was at trial, insofar as his right to enforce his constitutional right is concerned, it has in effect said there can be no procedural restrictions on the subsequent assertion of constitutional rights. There has

been a procedural rule of long standing in this state requiring contemporaneous objection to the introduction of inadmissible evidence before error may be asserted on appeal because of its admission. This rule serves a legitimate state purpose because it gives the trial court the opportunity to conduct a trial without using the tainted evidence, and a new trial may thus be avoided. Any other rule would destroy the possibility of giving any finality to the trial process. The defendant's attorney could fail to object to the admission of constitutionally objectionable evidence, secure in the knowledge that his client always had an anchor to windward guaranteeing him a new trial if the jury's verdict was adverse.

■ This procedural rule would be completely eroded by permitting the granting of relief in post-conviction proceedings in the absence of an objection at trial. It would be senseless to require an objection to the evidence as a prerequisite to the assertion of error on appeal if the necessity for such an objection could subsequently be avoided by instituting an application for post-conviction relief. We cannot believe the legislature intended any such result.

■ However, there are situations in which the law recognizes that it is inappropriate to require a contemporaneous objection at trial as a prerequisite to the subsequent raising of the constitutional issue. We believe that the provision in question was intended to prevent the assertion of the procedural rule in such situations. The most common illustration is where the objection could conceivably have been made but could not reasonably have been expected. Examples are where the right subsequently sought to be asserted was not generally recognized to be in exist-

ence at the time of trial; where counsel was excusably unaware of facts which would have disclosed a basis for the assertion of the right; and where duress or coercion prevented assertion of the right. Also, the failure to assert the right would not be a bar where counsel was incompetent or was guilty of bad faith.

In *Clark v. Gladden,* 247 Or 629, 432 P2d 182 (1967), we allowed a prisoner who had been represented by counsel at his sentencing hearing to attack in post-conviction proceedings an habitual-criminal sentence based upon foreign convictions which his counsel had not challenged at the hearing. We did not discuss counsel's reasons, if any, for failure to object, as neither party in the *Clark* case made the quality of counsel's performance an issue. The state adopted an all-or-nothing position, arguing that an Oregon prisoner cannot use Oregon post-conviction proceedings to challenge foreign convictions, regardless of their vulnerability to collateral attack, if he did not raise the questions at trial. We held otherwise.

Since the reasons for counsel's failure to challenge the convictions were never made an issue, we did not go into the line of inquiry which is opened up in the case at bar. Accordingly, our failure to discuss the circumstances under which counsel failed to object in the *Clark* case should not be taken as a holding that petitioner is entitled to relief without regard to such circumstances.

We now proceed to the question whether petitioner's failure to object to the admission of the evidence at his trial of conviction was under such circumstances that it would be unfair to enforce the procedural rule requiring a contemporaneous objection. Petitioner does not claim that his attorney at his trial of con-

viction was incompetent. The record shows that his counsel was of many years' standing in the Bar. Both petitioner and his attorney knew that petitioner's automobile was in the hands of the police. It was known by them that petitioner was apprehended in the basement of the bank at a place completely away from his vehicle. They do not contend that they thought the evidence from the vehicle had been secured pursuant to a warrant. When the state presented the evidence taken from the automobile, all relevant facts were known to both of them that were necessary in deciding whether an objection should or should not be made.

No showing is made by petitioner that he or his counsel were laboring under any coercion, implied or otherwise. Nor did they show that relevant facts were justifiably unknown to them which would have disclosed a basis for an objection. They appeared to contend at the post-conviction trial that some relevant aspects of the law of search and seizure which would have made clear their right to object were not known to them because of obscurity in the law. The trial of conviction was in 1963. There was nothing obscure about the law at that time as applied to the facts of the search and seizure in this case. *Mapp v. Ohio,* 367 US 643, 81 S Ct 1684, 6 L Ed 2d 1081 (1961), had been decided a year and a half earlier. *Mapp* was no innovation in Oregon, where the rule prohibiting the admission of illegally seized evidence was one of long standing.

Lest it be thought that in fact counsel was incompetent because he failed to object to the evidence, we quote with approval language quoted in *State v. Abel,* 241 Or 465, 469, 406 P2d 902, 904 (1965):

"'As to the requirement under the Fourteenth

Amendment, the services of counsel meet the requirements of the due process clause when he is a member in good standing at the bar, gives his client his complete loyalty, serves him in good faith to the best of his ability, and his service is of such character as to preserve the essential integrity of the proceedings as a trial in a court of justice. He is not required to be infallible. We know that some good lawyer gets beat in every law suit. He made some mistakes. The printed opinions that line the walls in our offices bear mute testimony to that fact. His client is entitled to a fair trial, not a perfect one.'

"U. S. ex rel Weber v. Ragen (CA 7 Ill) 176 F2d 579, 586, per Minton, J."

Also see *Benson v. Gladden,* 242 Or 132, 140-41, 407 P2d 634 (1965).

■■ When a petitioner has a competent attorney who is not guilty of fraud and all the circumstances are such that the attorney would reasonably have been expected to object to constitutionally defective evidence, there is nothing unfair in asserting in post-conviction proceedings the procedural rule requiring a contemporaneous objection. There is no substantial denial of a constitutional right. Certainly, in such a situation, everything has been done that can be done to provide petitioner with an opportunity to assert his constitutional right at his trial of conviction. If we were to presume that, under such circumstances, the failure to object was an oversight on the part of petitioner's attorney, we believe the procedural rule should still be invoked. Any other result would put the burden upon the state to see that the petitioner hired or was furnished at his trial of conviction that non-existent person, a perfect lawyer. This, in our opinion, is an impossibility, and due process does not require

it. Any other holding would also invite the intentional by-pass which no one could detect because the intent would be entirely within the mind of petitioner's attorney.

■ Petitioner bases his right to raise now the constitutional objection to the admissibility of the evidence on *Fay v. Noia,* 372 US 391, 83 S Ct 822, 9 L Ed 2d 837 (1963), and *Henry v. Mississippi,* 379 US 443, 85 S Ct 564, 13 L Ed 2d 408 (1965). In *Fay v. Noia* a state prisoner failed to appeal the admission in evidence of an allegedly coerced confession. He was permitted to assert the claimed inadmissibility of the confession in federal habeas corpus. We believe the case is inapplicable to the present situation for two reasons. First, the prisoner was in a position where he really had no choice because he was coerced by the possible infliction of the death penalty upon retrial, and, thus, the circumstances came within one of the well recognized exceptions to the rule requiring a contemporaneous objection at trial. Second, the decision determined an appeal from a habeas corpus trial in the federal system. Federal courts may adopt any res judicata rules they please for application in federal habeas corpus. Likewise, the state of Oregon may apply res judicata rules of the state's own choosing in state post-conviction proceedings.

We also believe *Henry v. Mississippi, supra,* does not sustain petitioner's position. It was an appeal to the United States Supreme Court from a state court conviction. Evidence of a claimed constitutionally defective search and seizure had been admitted without objection at trial. The Supreme Court concluded that if a state procedural rule prevented assertion on appeal in state court of the claimed defective seizure and served an adequate and legitimate state interest,

it would not review the alleged deprivation of the federal right. It also concluded that a rule similar to ours, requiring the accused to make a contemporaneous objection, served a legitimate state purpose. In *Henry,* the accused was not barred by his failure to object to the evidence because the state interest served by the rule requiring objection was subsequently served when the motion for directed verdict was made and ruled upon. Since, at that point, the state's interest would no longer be served by the state's insistence upon compliance with the rule requiring a contemporaneous objection, there was no longer any bar to review of the federal question by the Supreme Court. If the motion for directed verdict had not been made, *Henry* would then have been in the same posture as the case at bar, in which case it would seem clear that the Court would have held that review was barred because a legitimate and adequate state interest was served by the rule requiring a contemporaneous objection to inadmissible evidence.

In the present case there was no subsequent procedure as there was in *Henry v. Mississippi, supra,* which could have provided the state with the opportunity to protect its interest. Under these circumstances direct review by the Supreme Court is barred.

Petitioner also contends that he was not advised of his unqualified right to counsel prior to making damaging admissions which were the fruit of interrogation by police officers. There was evidence that he was told prior to interrogation that he had the right to remain silent, that what he said could be used against him, and that he could consult with an attorney, if he had one, prior to making any statements. He was not advised that he would be given

an appointed attorney by the state if he could not afford one.

Petitioner argues that the 90-day period after affirmance of his conviction during which he could have appealed for a writ of certiorari to the United States Supreme Court did not expire until June 23, 1964, and, therefore, his case had not been finally adjudicated when *Escobedo v. Illinois,* 378 US 478, 84 S Ct 1758, 12 L Ed 2d 977, was decided on June 22, 1964. He therefore contends that he is entitled to assert any constitutional rights recognized by *Escobedo* and that *Escobedo* established his unqualified right to counsel.

We have established that retrospective application of *Escobedo* will be limited to cases which were not finally adjudicated on June 22, 1964, the date *Escobedo* was decided. *Elliott v. Gladden,* 244 Or 134, 135, 411 P2d 287 (1966).

■ We have also established that a case will not be considered finally adjudicated until the time has elapsed in which an application for a writ of certiorari can be made to the United States Supreme Court. *Haynes v. Cupp,* 253 Or 566, 456 P2d 490 (1969); *Guse v. Gladden,* 243 Or 406, 414 P2d 317 (1966). Therefore, as petitioner contends, his case was not final when *Escobedo* was decided and he may assert any rights established there.

■ In addition, we have held that *State v. Neely,* 239 Or 487, 395 P2d 557, 398 P2d 482 (1965), was but the logical extension of *Escobedo* and, therefore, a person whose case was not finally adjudicated on the day that *Escobedo* was decided is also entitled to the rights extended by *Neely. Haynes v. Cupp, supra; Elliott v. Gladden,* 244 Or at 135. In *Neely* we stated as follows:

"We hold that the Sixth Amendment as made

obligatory by the Fourteenth Amendment requires that before law enforcement officials can interrogate a person who is the focal suspect of a crime, such person must effectively be informed of his right to assistance of counsel as well as his right to remain silent \* \* \*." 239 Or at 503-504.

No thought was given at the time of the *Neely* decision to the necessity of informing the suspect that if he was indigent and could not afford an attorney, one would be appointed for him. *Miranda v. Arizona,* 384 US 436, 473, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966), first so required. We are, therefore, faced with the question whether this requirement of *Miranda* was sufficiently foreshadowed by *Escobedo* that a person whose case was finally adjudicated prior to *Miranda* but subsequent to *Escobedo* is nevertheless entitled to assert the benefit of the *Miranda* holding.

In *Johnson v. New Jersey,* 384 US 719, 734, 86 S Ct 1772, 16 L Ed 2d 882 (1966), the Supreme Court of the United States held that the standards of *Miranda* were not to be given retrospective application. *Miranda* was considered not sufficiently anticipated by *Escobedo* to justify the application of *Miranda* requirements from the date of *Escobedo*. We, in effect, decided that neither *Escobedo* nor *Neely* sufficiently anticipated the requirements of *Miranda* when we decided in *State v. Allen,* 248 Or 376, 382 n. 1, 434 P2d 740 (1967), that the principles relating to police interrogation announced in *Miranda* would be given no retrospective application. Petitioner's second contention, therefore, is also not well taken.

The judgment of the trial court is affirmed.